**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2021-WJM-CBS

RONALD MUKASA MAITEKI,

    Plaintiff,

v.

MARTEN TRANSPORTATION LTD.,
KNIGHT TRANSPORTATION INC.,
SWIFT TRANSPORTATION CORPORATION INC.,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
AND MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Plaintiff Ronald Mukasa Maiteki ("Plaintiff") brings this action against three of his former employers, Marten Transportation LTD ("Marten"), Knight Transportation, Inc. ("Knight"), and Swift Transportation Corporation Inc. ("Swift") (collectively "Defendants"). Before the Court are the following motions: (1) Marten's Partial Motion to Dismiss (ECF No. 64); (2) Swift's Motion to Dismiss (ECF No. 68); and (3) Knight's Motion for Judgment on the Pleadings (ECF No. 71). For the reasons set forth below, the Motions are granted in part and denied in part.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the

plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009).

## II.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and are taken as true for purposes of the instant Motions.

Plaintiff is a commercial truck driver who worked for Swift from November 2006 until March 2007.  (Am. Compl. (ECF No. 58) ¶ 2.)  Plaintiff was involved in no accidents while employed by Swift.  (*Id.*)  However, after Plaintiff resigned, Swift reported false information to HireRight Inc., a credit reporting agency ("HireRight") that prepares a "Drive-A-Check" report which is relied on by commercial carriers to make hiring decisions.  (*Id.*)  Specifically, Swift informed HireRight that Plaintiff had a non-

recordable accident involving a left turn on February 7, 2007.  (*Id.*)

Plaintiff worked for Knight from March 2007 until May 2008.  (*Id.* ¶ 3.)  During this time, Plaintiff had no accidents.  (*Id.*)  Upon his resignation, Knight reported to HireRight that Plaintiff had five non-recordable accidents.  (*Id.*)  The accidents were included on Plaintiff's Drive-A-Check report.  (*Id.*)

In September 2008, Plaintiff applied for jobs with three trucking companies.  (*Id.* ¶ 5.)  Plaintiff was not hired for any of these positions because of the negative reports on his Drive-A-Check report.  (*Id.*)  Plaintiff contacted Knight and Swift about the false information they had reported to HireRight and was told that they would remove the false reports after completing an investigation.  (*Id.*)

In May 2009, Plaintiff again applied for truck driving jobs but was again rejected due to false information on his Drive-A-Check report.  (*Id.* ¶ 7.)  Plaintiff re-contacted Knight and Swift and was informed that they were still carrying out their investigations and would correct Plaintiff's report as soon as they were finished.  (*Id.*)

In May 2010, Plaintiff contacted HireRight to check whether the false reports had been removed by Knight and Swift.  (*Id.* ¶ 10.)  HireRight informed Plaintiff that Knight and Swift had promised to remove the false reports upon completion of their investigations, and not later than the end of May 2010.  (*Id.*)

In February 2011, Plaintiff accepted a position as a truck driver for Marten.  (*Id.* ¶ 12.)  Plaintiff worked for Marten until December 2011 and had no accidents during his employment.  (*Id.* ¶ 13.)  In fact, Plaintiff was repeatedly commended for his safe driving.  (*Id.*)  However, after his employment with Marten ended, Plaintiff learned that

Marten reported "negative and false information" to HireRight, which was later included on his Drive-A-Check report. (*Id*. ¶ 20.)

On March 7, 2012, Plaintiff filed a dispute with HireRight to have the false and negative information removed from his Drive-A-Check report. (*Id*. ¶ 16.) HireRight contacted Marten about the information it had provided. (*Id*.) Marten informed HireRight that it would remove the information after an investigation. (*Id*.)

On March 20, 2012, Plaintiff was not hired by a trucking company based on the false information on his Drive-A-Check report that had been provided by Knight, Swift, and Marten. (*Id*. ¶ 47.) The inability to obtain employment as a truck driver has caused Plaintiff to suffer severe emotional distress and experience a significant loss of income. (*Id*. ¶ 56.)

### III.  ANALYSIS

Plaintiff's Amended Complaint brings the following claims: (1) falsely reporting accidents on his HireRight record in violation of the Fair Credit Reporting Act ("FCRA") and the Colorado Credit Reporting Act ("CCRA"); (2) making a false employment reference in violation of Colo. Rev. Stat. § 8-2-114; (3) defamation; and (4) intentional infliction of emotional distress. (ECF No. 58.) Defendants move to dismiss all of these claims. The Court will discuss each in turn below.

**A.    FCRA & CCRA**

Count One of Plaintiff's Amended Complaint alleges that Defendants violated the FCRA and CCRA. (Am. Compl. pp. 6-9.) Defendants move to dismiss this claim because neither the FCRA nor the CCRA create a private right of action against the

furnisher of the information (as opposed to the credit reporting agency). (ECF No. 71 at 4.) Plaintiff admits that he cannot bring such a claim against the Defendants because they merely furnished false information. (ECF No. 75 at 3.) Thus, to the extent Plaintiff attempts to allege a violation of the FCRA or the CCRA premised on Defendants' reporting false information to HireRight, the Motions are granted. *See Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) (private right of action for false reporting may only be brought against credit reporting agency, not against entities that provide information to the credit reporting agency).

Acknowledging that he cannot state a claim for furnishing false information, Plaintiff instead argues that the thrust of his FCRA[1] claim is Defendants' failure to reasonably investigate the truthfulness of the information submitted to HireRight after being notified that Plaintiff was contesting whether the reported accidents occurred. (ECF No. 75 at 3.)

Under the FCRA, when a furnisher of credit information[2] is notified by a credit reporting agency that the truthfulness of information it supplied has been contested, the furnisher is required to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Courts have implied a reasonableness requirement to this investigation. *See Cousineau v. Unifund CCR Partners*, 2012 WL

---

[1] Plaintiff fails to cite any provision in the CCRA which creates a private right of action for failure to conduct a reasonable investigation. In fact, Plaintiff's responses to the Defendants' Motions does not address his CCRA claim at all. Thus, the Court finds that Plaintiff has abandoned that claim and grants Defendants' Motions with respect to any CCRA claim.

[2] The parties here appear to agree that Plaintiff's driving record is credit information for purposes of the FCRA.

3135687, at *3 (D. Colo. July 31, 2012); *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 426 n.2 (4th Cir. 2004).

  Defendants contend that Plaintiff's Amended Complaint does not contain sufficient factual allegations to state a claim for failure to reasonably investigate. (ECF No. 77 at 4.) The Court disagrees. While the title of Count One of Plaintiff's Amended Complaint states only that Defendants furnished false and inaccurate information to a consumer reporting agency, there are sufficient facts in the numbered paragraphs to put Defendants on notice of the fact that Plaintiff is bringing a claim for failure to conduct a reasonable investigation. For example, Plaintiff alleges that Knight and Swift were contacted by HireRight in May 2009, that they informed HireRight that they were still carrying out investigations into false accident reports, and that they would remove false negative reports after completing their investigations. (Am. Compl. ¶¶ 7-8.) Plaintiff also alleges that these same accidents were included on his Drive-A-Check report in May 2010. (*Id.* ¶ 10.) With respect to Marten, Plaintiff alleges that he contacted HireRight in March 2012 to contest the false information reported by Marten, that Marten promised to remove such information upon completion of an investigation, and that Marten failed to do so. (*Id.* ¶ 22.)

  The Court finds that these allegations are sufficient to put Defendants on notice of Plaintiff's FCRA claim for failure to conduct a reasonable investigation. Additionally, the Court finds that Plaintiff has alleged sufficient facts to state a claim for failure to conduct a reasonable investigation. Plaintiff alleges that he repeatedly informed HireRight that his Drive-A-Check report contained false information, that HireRight

repeatedly contacted Knight and Swift, and that these entities repeatedly stated that they would conduct an investigation and then remove the false information. Plaintiff also alleges that, nearly three years after he first contested the accuracy of his Drive-A-Check report, the same false information reported by Swift and Knight still appears. On these facts, a reasonable juror could conclude that Knight and Swift did not conduct a reasonable investigation into the accuracy of the information they provided to HireRight regarding Plaintiff's driving record.

Defendants Swift and Knight also move to dismiss Plaintiff's FCRA claim as untimely. (ECF No. 69 at 10-11; ECF No. 71 at 7.) The FCRA permits a claim to be brought within two years of a plaintiff's discovery of the violation or five years of the date of the violation, whichever is earlier. See 15 U.S.C. § 1681p. Plaintiff here alleges that he first learned of the accidents reported by Swift and Knight when he applied for positions in September 2008. (Am. Compl. ¶ 5.) Plaintiff did not bring this action until August 2012. (ECF No. 1.) Because Plaintiff did not bring this action until nearly four years after he learned of the false report, Defendants Knight and Swift contend that his claims are untimely.

Plaintiff contends that his FCRA claim is timely because the statute of limitations for his FCRA claim restarts each time the furnisher of information is notified of the fact that the accuracy of such information has been contested, which triggers a new duty to conduct a reasonable investigation. (ECF No. 75 at 10.) In support of this argument, Plaintiff cites case law showing that some courts have held that "each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation." *Larson v. Ford Credit*, 2007 WL

1875989 at *4 (D. Minn. June 28, 2007); see also *Broccuto v. Experian Info. Solutions, Inc.*, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008) ("The statute's construction creates a violation every time a consumer submits a dispute to a credit reporting agency and that agency or the relevant lender does not respond to the complaint as directed by the statute.  The fact that the account or transactions questioned in the instant dispute may have also been the subject of a previous dispute does not mitigate the obligations of the bank or credit reporting agency" to take action pursuant to the statute).

As Defendants point out, other courts have held that the re-reporting of allegedly false information does not trigger a new limitations period.  *See, e.g., Bittick v. Experian Info. Solutions, Inc.*, 419 F. Supp. 2d 917 (N.D. Tex. 2006) (holding that lodging another dispute with a credit reporting agency regarding the same allegedly inaccurate information does not start a new limitations period); *Blackwell v. Capital One Bank*, 2008 WL 793476 (S.D. Ga. Mar. 25, 2008) (declining to adopt the reasoning in *Larson* and holding that newly submitted complaints do not restart the statute of limitations).

The Court has reviewed this split in authority and agrees with the reasoning of *Larson*.  In the Court's view, adopting this construction of the statute's limitations provision is an approach more consonant with the broad remedial purposes of the FCRA.  As a consequence, the Court holds that each re-report of allegedly false information triggers a new duty to conduct a reasonable investigation, which in turn re-starts the limitations period for an FCRA claim based on the failure to conduct a reasonable investigation.  *See Larson*, 2007 WL 1875989 at *4.

Plaintiff alleges that he filed a dispute with HireRight to have the false information removed on March 7, 2012, which created a new duty to conduct a reasonable investigation, and started a new limitations period. (Am. Compl. ¶ 16.) Because this action was commenced within two years of that dispute, the Court finds that Plaintiff's FCRA claim is timely.

Accordingly, Defendants' Motions are granted to the extent they seek dismissal of any FCRA claim related to the furnishing of false information but denied to the extent they allege a failure to conduct a reasonable investigation. Further, Defendants' Motions are granted to the extent they seek dismissal of Plaintiff's CCRA claims.

### B. Providing a False Employment Reference

Count Two alleges that Defendants violated Colorado Revised Statute § 8-2-114 by knowingly furnishing a false employment reference. (Am. Compl. pp. 9-10.) Defendants move to dismiss this claim on the basis that this statute does not create a private right of action; rather, Defendants contend that § 8-2-114 is a criminal statute, which provides for criminal sanctions if violated. (ECF No. 65 at 5.) Plaintiff has failed to come forward with a single citation to authority showing that § 8-2-114 either creates a private right of action or has ever been civilly enforced in the state of Colorado. (ECF No. 75 at 6.) As such, the Court finds that this statute does not create a private right of action and that Plaintiff's claim should be dismissed on this basis.

Additionally, to the extent § 8-2-114 could potentially create a private right of action, it would not apply here. Section 8-2-114 governs information that a former employer can legally provide to a prospective employer. *See* Colo. Rev. Stat. § 8-2-114(2). Defendants here did not provide any information to Plaintiff's prospective

employers; they simply reported information on Plaintiff's driving record to HireRight, which is a credit reporting agency. HireRight is the only entity that reported information to prospective employers, and it is not named as a Defendant here. Thus, even to the extent that § 8-2-114 creates a private right of action, Plaintiff has failed to state a claim under this section.

As such, Defendants' Motions are granted to the extent they seek dismissal of Count Two of the Amended Complaint.

**C.     Defamation**

Count Three of Plaintiff's Amended Complaint brings a claim for defamation against each of the Defendants. (Am. Compl. pp. 10-13.) Defendants Knight and Swift move to dismiss this claim as untimely.[3]

In Colorado, a defamation claim must be filed within a year of the "date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Burke v. Greene*, 963 P.2d 1119, 1121 (Colo. App. 1998) (citing Colo. Rev. Stat. § 13-80-108(1)). The allegedly defamatory statements in this case are the false accident reports made by Knight and Swift to HireRight. Plaintiff learned of these false statements in September 2008, when he was denied employment because of his Drive-A-Check report containing this false information. (Am. Compl. ¶ 15.) Thus, Plaintiff both knew of his injury and its cause in September 2008. Because Plaintiff did

---

[3] Knight and Swift also argue that Plaintiff has failed to state a claim because their statements to HireRight are not defamatory statements and because DOT regulations bar any suit for defamation. However, the Court need not address these arguments because it finds that the defamation claims are untimely.

not file this action until nearly four years later, it is untimely.[4]

Plaintiff alleges that the statute of limitations on his defamation claim should be equitably tolled because he was lulled into believing that Defendants would correct the false information on his Drive-A-Check report after they conducted an investigation. (ECF No. 75 at 11-12.)  Equitable tolling is applicable under Colorado law when: (1) the defendant's wrongful conduct prevented compliance with the statutory periods; or (2) the plaintiff did not timely file his claims because of extraordinary circumstances.  *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-1097 (Colo. 1996). Extraordinary circumstances are a basis for equitable tolling because "it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible."  *Id*. at 1097.

Equitable tolling, however, should be invoked sparingly.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).  Furthermore, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Graham-Humphreys*, 209 F.3d at 561-62 (citing *Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 151 (1984)) ("[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

The Colorado Court of Appeals has held that a limitations period should not be

---

[4] Unlike with his FCRA claim, Plaintiff does not cite any authority showing that the limitations period for a defamation claim restarts each time the allegedly defamatory statement is published.

11

tolled when an individual is assured by a company that it is investigating a complaint and that it "would get back" to the person. *See Neuromonitoring Assoc. v. Centura Health Corp.*, 2012 WL 3518017 (Colo. App. Aug. 16, 2012). This is precisely what Plaintiff argues here. As such, the Court finds that Plaintiff has failed to show that he is entitled to equitable tolling in this case.

In sum, the Court finds that Plaintiff's defamation claim against Defendant Knight and Swift is untimely, and these Defendants' Motions are granted with respect to the defamation claim. As Marten did not move to dismiss the defamation claim against it, this claim remains pending.

### D.  Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants' false reporting of accidents to HireRight constituted intentional infliction of emotional distress ("IIED"). (Am. Compl. pp. 13-14.) Plaintiff contends that Defendants made these false reports to punish him, and that he suffered severe mental distress, depression, and mental pain and suffering. (*Id.*)

To state a claim for intentional infliction of emotional distress (which is also known as outrageous conduct), a plaintiff must allege sufficient facts to show: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966-67 (Colo. App. 2009).

Knight moves to dismiss this claim on the basis that Plaintiff has failed to allege sufficient facts to show that it engaged in extreme and outrageous conduct. (ECF No.

69 at 8.)   In Colorado, "[t]he tort of outrageous conduct was designed to create liability for a very narrow type of conduct." *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).  Consequently,

> the level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient.  Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (facts must so arouse resentment against the defendant in average members of the community as to lead them to exclaim, "Outrageous!").

In this case, Plaintiff alleges that Knight knowingly and repeatedly reported false information to HireRight.  (Am. Compl. ¶ 49.)  These allegations fall far short of meeting the exacting standard required to state a claim for intentional infliction of emotional distress.  *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct); *Green*, 155 P.3d at 386-87 (allegations that employer sent untrained and under-qualified workers to perform dangerous acts was not sufficient to state a claim for outrageous conduct).  Therefore, the Court finds that Plaintiff has failed to state a claim for outrageous conduct.

Additionally, Plaintiff's claims for intentional infliction of emotional distress against Knight and Swift are untimely.  The statute of limitations for an outrageous

13

conduct claim is two years. *See* Colo. Rev. Stat. § 13-80-102(1)(a). As with the defamation claim, Plaintiff was aware of both his injury and the source of his injury in September 2008. (Am. Compl. ¶ 5.) Because Plaintiff did not initiate this action until more than two years after his claim accrued, it is untimely. Moreover, as discussed above, Plaintiff has failed to show that his limitations period should be equitably tolled.

Accordingly, Defendants Knight's and Swift's Motions are granted with respect to Plaintiff's claim for intentional infliction of emotional distress. Because Marten did not move to dismiss Plaintiff's intentional infliction of emotional distress claim against it, such claim remains pending.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant Marten's Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 64) is DENIED with respect to Plaintiff's FCRA claim related to the failure to conduct a reasonable investigation, but GRANTED in all other respects;

2. Defendant Swift's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 68) is DENIED as to Plaintiff's FCRA claim related to the failure to conduct a reasonable investigation, but GRANTED in all other respects;

3. Defendant Knight's Motion for Judgment on the Pleadings (ECF No. 71) is DENIED as to Plaintiff's FCRA claim related to the failure to conduct a reasonable investigation, but GRANTED in all other respects;

4. The following claims are DISMISSED WITH PREJUDICE: Plaintiff's claims under the FCRA for reporting false information (Count One), Plaintiff's claim

under the CCRA (Count One), Plaintiff's claim for furnishing a false employment reference (Count Two), Plaintiff's defamation claim[5] against Knight and Swift (Count Three), and Plaintiff's intentional infliction of emotional distress claims against Knight and Swift (Count Four); and

5. The following claims remain pending in this case: Plaintiff's FCRA claim against all Defendants for failure to conduct a reasonable investigation, and Plaintiff's defamation and intentional infliction of emotional distress claims against Marten.

Dated this 4th day of December, 2013.

BY THE COURT:

*[signature]*

William J. Martinez
United States District Judge

---

[5] Although the Court is dismissing Plaintiff's defamation and intentional infliction of emotional distress claims as untimely, the Court dismisses these claims with prejudice because they cannot be refiled. *See Satterfield v. Franklin*, 2009 WL 523181, *1 (W.D. Okla. March 2, 2009) (recognizing the futility of dismissing claims without prejudice when the basis for dismissal is that they are untimely).