**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2021-WJM-CBS

RONALD MUKASA MAITEKI,

    Plaintiff,

v.

MARTEN TRANSPORT LTD.,

    Defendant.

---

**ORDER ON PENDING MOTIONS**

---

In these postjudgment proceedings, the only remaining parties are Plaintiff Ronald Maiteki ("Maiteki") and Defendant Marten Transport Ltd. ("Marten"). Currently before the Court are two motions: Marten's Motion for Attorneys' Fees and Sanctions ("§ 1927 Motion") (ECF No. 271) and Maiteki's Motion to Review Clerk's Order Taxing Costs ("Costs Motion") (ECF No. 285). For the reasons explained below, both motions are granted in part and denied in part.

**I. ANALYSIS: SANCTIONS**

Marten moves to recover a portion of its attorneys' fees as a sanction against Maiteki's attorneys, Andrew Nyombi and Ikechukwu Emejuru ("Maiteki's Counsel"). Marten's motion is intertwined with this Court's order granting summary judgment in favor of Marten ("Summary Judgment Order") (*see* ECF No. 259), which was recently affirmed by the Tenth Circuit. *See Maiteki v. Marten Transp. Ltd.*, __ F.3d __, 2016 WL 3747396 (10th Cir. July 13, 2016). Familiarity with the Summary Judgment Order is

presumed.[1]

A.      **Standard for Sanctions Under 28 U.S.C. § 1927**

Marten primarily requests sanctions under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Given this statutory language, "[a] court may assess attorney[s'] fees against an attorney under § 1927 if (a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000). "Actions are considered vexatious and unreasonable if the attorney acts in bad faith . . . or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court." *Id.*; *see also Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (collecting various specific scenarios that evince sanctionable conduct). The attorney's conduct is judged

---

[1] As midnight neared on Maiteki's Counsel's deadline to respond to Marten's § 1927 Motion, Counsel filed a motion for leave to exceed the page limit, and then filed the response itself, which ran to 40 pages. (ECF Nos. 277, 278.) The Court denied the motion to exceed the page limit, explaining, among other things, that "part of the reason the Response is overlong is certain unnecessary formatting choices, namely, the Response contains an extra space between every paragraph, and appears to employ 1.5-inch left and right margins. *Cf.* D.C.COLO.LCivR 10.1 (specifying 1-inch left and right margins and double-spacing)." (ECF No. 279.) The Court nonetheless *sua sponte* granted Maiteki's Counsel leave to file a 20-page response within two days. (*Id.*) Counsel did so, filing a 19-page response—but with 0.5-inch left and right margins. (*See generally* ECF No. 280.) Given that this Court's order specified the precise formatting required, Maiteki's Counsel's failure to employ that formatting resulted either from unfathomable inattention or contemptuous disregard. In either case, the Court could strike Maiteki's Counsel's response, deem Marten's § 1927 Motion unopposed, and award the entire amount of attorneys' fees requested ($138,094.50). But that would be an unduly harsh result on account of a margin size violation. The Court therefore accepts Maiteki's Counsel's response as filed.

objectively; subjective bad faith is not required to justify § 1927 sanctions. *See Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible."). Ultimately, whether to award § 1927 sanctions is a matter committed to this Court's discretion. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278–79 (10th Cir. 2005).

**B.     March 16, 2015 Letter**

Marten requests all of its attorneys' fees incurred since March 16, 2015, which is the date on which Marten sent a letter to Maiteki's Counsel describing Marten's reasons for believing that Maiteki could never prevail on the merits. (ECF No. 271 at 8–11, 14 & n.7.) Marten argues that Maiteki's Counsel continued to litigate Maiteki's claims "long after counsel should have known those claims were meritless," which was supposedly no later than the date on which they received Marten's letter. (*Id.* at 9–10.) *See also Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) (§ 1927 sanctions justified where plaintiffs' attorney "continued to assert claims for liability against [a defendant] with knowledge that [plaintiffs] had no factual or legal basis or claim of liability against [the defendant], and did so long after it would have been reasonable and responsible to have dismissed the claims against [the defendant]").

Marten's March 16, 2015 letter is a fairly typical demand-style letter. (*See* ECF No. 271-3.) It mostly comprises deposition excerpts from a Marten employee who testified that Marten performed a by-the-book reinvestigation, as compared to excerpts

from Maiteki himself, who continually answered "I don't know" to questions regarding whether he had any basis to dispute Marten's characterization of its reinvestigation. Although the letter ultimately turned out to be correct in various respects, the Court cannot say on this record that Maiteki's Counsel should have known upon receiving that letter (or earlier) that Maiteki's claims against Marten could not possibly succeed. The Court therefore denies Marten's request for all of its attorneys' fees since March 16, 2015.

**C.     Summary Judgment Reply Brief**

Although § 1927 sanctions are not available for all fees and costs incurred after March 16, 2015, Marten notes that it incurred $29,066.50 specifically in filing its reply in support of summary judgment (*see* ECF No. 271 at 14), and Marten attacks Maiteki's Counsel's summary judgment response brief as vexatious and multiplicative (*id.* at 11–12). The Court understands Marten to be arguing that it should at least receive its fees with respect to its reply brief. The Court agrees.

An appropriate starting point for this analysis is *Herzfeld & Stern v. Blair*, 769 F.2d 645 (10th Cir. 1985). There, the defendant's attorney appealed a judgment against his client and included arguments never raised below, supported by purported admissions that he did not cite, and which the court could not find in the record. *Id.* at 646. As to the record citations the attorney did include, the court found "citation after citation in which his references are at least inaccurate, if not totally misleading." *Id.* at 647. Indeed, "[t]he many instances in which counsel's references to the record are contrary to what is found indicate that he has been either cavalier in regard to his

approach to this case or bent upon misleading the court." *Id.* Either way, said the court, "sanctions [against the attorney under § 1927] are not only proper, they are also necessary." *Id.*

*Herzfeld*, although more than thirty years old, might as well have been written in response to this case. Soon after this Court began evaluating the parties' summary judgment arguments, the Court realized that a substantial number of Maiteki's Counsel's record citations did not support the statements to which they were attached. These discrepancies pervaded Maiteki's position with respect to nearly every potentially material fact and could not have been accidental, as extensively detailed in the Summary Judgment Order. (*See* ECF No. 259 at 3–20.) Given the details provided in that Order, the Court need only summarize its findings here:

- Maiteki's Counsel asserted that Marten fleet manager Wendy Sobotta "admitted that Maiteki never had any speeding citations or incidents," when Sobotta actually stated in the relevant deposition testimony that she was "[n]ot . . . aware" of any speeding citations. (*Id.* at 5.)
- Maiteki's Counsel repeatedly referred to an e-mail chain as evidence of systemic failure to reinvestigate, when the e-mail chain actually related only to one specific issue involved in the reinvestigation. (*Id.* at 6, 7–8.)
- Maiteki's Counsel asserted that Marten "never investigated" Maiteki's Illinois speeding incident, denied that a warning letter in the record was genuine, and claimed that "Marten never . . . disciplines" drivers for speeding, all purportedly supported by an interrogatory response that

actually says, "Generally speaking, Marten does not conduct internal investigations [regarding its drivers who have been cited for speeding]." (*Id.* at 5–7.)

- Maiteki's Counsel asserted that "Marten has a practice and pattern of falsifying" information it places in its internal records regarding drivers, citing a single incident in which the Federal Trade Commission received a complaint that Marten had "inaccurate information" on a driver's work history report. The FTC had no records of acting on this complaint. (*Id.* at 10–11.)

- Maiteki's Counsel argued that "Marten's [digital human resources file] is severely error prone," citing out-of-context and otherwise opaque deposition testimony where the only language relevant to errors is Maiteki's Counsel's own assertion—not assented to by Marten's witness—that the human resources file contains errors. (*Id.* at 11–12.)

- Maiteki's Counsel claimed that Marten, upon reinvestigating driver history, "has had to make corrections and clarifications on several occasions," citing a deposition excerpt that says nothing more than that Marten has, in fact, corrected driver history reports based on information learned during reinvestigation. (*Id.* at 12–13.)

- Maiteki's Counsel asserted that Marten can still access historical speed-tracking data regarding Maiteki, based on deposition testimony that actually explains Marten's continuing use of speed-tracking data on its current drivers, not its ability to access historical data. (*Id.* at 15–16.)

- Maiteki's Counsel deemed it "undisputed" that Marten, as a matter of policy, "does not use or even condone" speed-tracking technology (and therefore could not have known about speeding it attributed to Maiteki), citing a driver handbook and deposition testimony showing only that Marten does not condone its drivers' use of devices such as radar detectors or police scanners—not that Marten disapproves of devices by which it can track its own drivers' speed. (*Id.* at 17–19.) This Court specifically found that Maiteki's Counsel's characterization of Marten's position was "intentionally misleading." (*Id.* at 19.)[2]

- Maiteki's Counsel argued that Marten's trucks are governed and therefore "cannot speed past the posted speed limit anywhere," when Maiteki's own deposition actually explained that Marten's trucks cannot speed where the posted speed limit matches the governor's speed limit. (ECF No. 19–20.) The Court found that Maiteki's Counsel "[could ]not truthfully represent" otherwise. (*Id.* at 20.)

In response to all this, Maiteki's Counsel deems it

> noteworthy that Marten does not state why it believes these
> were misrepresentations despite the fact that [Maiteki]

---

[2] This tactic of intentional misdirection actually continues in Maiteki's Counsel's response to Marten's § 1927 Motion. Referring to the Sobotta deposition passage discussed in the first bullet point, above, Counsel argues that Sobotta was designated by Marten's attorneys as someone "knowledgeable" regarding, among other things, Maiteki's "driving record and violations during his employment." (ECF No. 280 at 4.) Based on this, says Counsel, Sobotta "was aware of the claims in [Maiteki's] amended complaint and was prepared to testify on these allegations including allegations by Maiteki that the speeding citations that Marten alleged did not exist." (*Id.*) This entire argument is framed to give the impression that Sobotta was Marten's designated Rule 30(b)(6) witness, whose lack of knowledge might bind Marten. But Sobotta was *not* Marten's 30(b)(6) witness. (*See* ECF No. 286 at 5 & n.3.)

> attached the actual deposition transcripts and excerpts for the Court to reach a decision. Marten's argument would have made sense had [Maiteki] not attached pertinent deposition transcripts and merely made representations without any factually corresponding excerpts.

(ECF No. 280 at 13.) This is frankly astounding. Maiteki's Counsel appears to believe that attaching evidence gives them license to characterize that evidence in any way they want, and it is for this Court to decide whether they have characterized it accurately. Maiteki's Counsel are seriously mistaken. As officers of the Court, it is their duty to convey evidence accurately. Most attorneys, of course, try to convey evidence in the best possible light for their clients. But there is a difference between putting evidence in the best possible light and blatantly misstating the evidence. Maiteki's Counsel engaged in the latter practice, and it is no excuse that they gave this Court the materials necessary to uncover their misrepresentations.

Maiteki's Counsel's approach to the evidence was vexatious and objectively unreasonable. Moreover, it unnecessarily multiplied these proceedings because, at a minimum, it required Marten's attorneys to spend significant time in Marten's summary judgment reply brief correcting Maiteki's Counsel's pervasive misstatements. (*See* ECF No. 236 at 2–10; *see also* ECF 271-16 at 2 (Marten attorney timenote reflecting a meeting with fellow attorneys to discuss "factual misstatements by Maiteki's attorneys and addressing all of them within page limits").) Moreover, Marten was forced to shape its reply brief to address claims and theories from Maiteki's Counsel that had by then become frivolous in light of Counsel's inability to present properly characterized, supporting evidence. (ECF No. 236 at 10–20.)

Accordingly, pursuant to § 1927, Marten is awarded its attorneys' fees reasonably incurred in preparing and filing its summary judgment reply brief.

**D.     Response to Motion to Strike**

Marten also breaks out the attorneys' fees incurred in responding to Maiteki's "Expedited Motion to Bar Admission or Strike as Untimely Production of Evidence or to for [*sic*] Leave to File a Surreply" ("Motion to Strike"). (ECF No. 239; *see also* ECF No. 271 at 14–15.) This Motion addressed certain evidence that Marten disclosed for the first time with its summary judgment reply brief, supposedly to refute an argument raised in Maiteki's response. The Court did not consider Marten's additional evidence when resolving Marten's summary judgment motion, thereby mooting Maiteki's Motion to Strike. (ECF No. 259 at 8, 49.)

The Court finds that it cannot determine whether the Motion to Strike was vexatiously multiplicative without resolving it on its merits—and the Court declines to resolve it on its merits at this stage, given that it is moot. Nonetheless, on its face, the Motion appears to present a nonfrivolous argument for exclusion of newly disclosed evidence. Although the Motion to Strike continues Maiteki's Counsel's penchant for distracting rhetoric (*e.g.*, "Marten introduced a new strange species of evidence," ECF No. 239 ¶ 13), it nonetheless makes a facially fair argument for exclusion of evidence disclosed for the first time after discovery deadlines have passed. Therefore, the Court will not award to Marten the attorneys' fees incurred in responding to the Motion to Strike.

### E. Deposition of Maiteki's Expert

After the close of summary judgment briefing, Marten (and former codefendant Voyager Express) deposed Maiteki's designated damages expert, Mr. Deo Rubbani. This deposition spanned two days. Having read the transcripts of that deposition, the Court agrees with Marten's characterization:

> Throughout both days of the deposition, Mr. Rubbani engaged in dilatory and obstructionist behavior, refusing to answer a number of questions, and, amazingly, claiming ignorance of a number of common words of the English language, including "attorney," "deposition," "lawsuit," and "book." Further, he unreasonably evaded answering a question as to whether he understood that he was under oath, requiring Marten's counsel to re-ask the question numerous times.
>
> Mr. Rubbani also took calculated actions to insult Marten's counsel . . . .

(ECF No. 271 at 6.) In other words, Rubbani's conduct was thoroughly unprofessional. Marten now wants to hold Maiteki's Counsel liable for the multiplication of proceedings that Rubbani caused. (ECF No. 271 at 6–8, 15.)

Although Rubbani certainly made the deposition difficult, Marten (and Voyager) noticed that deposition, so Marten would have incurred some amount of the fees it now claims even if Rubbani had behaved impeccably. The question for § 1927 purposes is whether the deposition was substantially and unreasonably lengthened due to Maiteki's Counsel's conduct. Marten has two theories in this regard.

Marten's first theory is that Maiteki's Counsel "actively promoted" Rubbani's obstructive behavior. (ECF No. 271 at 7–8.) As circumstantial evidence, Marten offers the fact that (a) Maiteki himself at times behaved with similar unprofessionalism in his

own deposition (an assertion with which this Court agrees, *see* ECF No. 259 at 35–39), and (b) Maiteki's Counsel withdrew Rubbani as an expert witness at the final pretrial conference. The Court concludes that this evidence, although raising a valid suspicion, is not enough on its own to sustain the charge that Maiteki's Counsel procured Rubbani's obstructionism. To justify § 1927 sanctions based on such accusations, the Court would likely need to hold an evidentiary hearing, which Marten has not requested. Accordingly, the Court will not award § 1927 sanctions on this theory.

Marten's second theory is that Maiteki's Counsel "did not take any action to address, let alone change, Mr. Rubbani's behavior. To the contrary, [Counsel] appeared to encourage that behavior by making countless inappropriate objections and arguing with defense counsel for no good reason." (ECF No. 271 at 7.) The Court agrees that Maiteki's Counsel made numerous inappropriate objections and was unnecessarily argumentative. However, the Court could not locate a case in which such behavior was an appropriate basis for § 1927 sanctions (as opposed to Federal Rule of Civil Procedure 30(d)(2) sanctions). In addition, Marten has offered no basis for determining how much of the deposition costs—which, again, would have been incurred to some degree no matter what—were the result of Maiteki's Counsel's behavior, as compared to Rubbani's behavior or even Voyager's counsel's behavior.[3] The Court therefore will not award § 1927 sanctions to Marten based on the fees incurred in connection with the Rubbani deposition.

---

[3] For example, Voyager's counsel, Maiteki's Counsel, and Rubbani spent significant time arguing over whether Rubbani was required to answer certain questions regarding his immigration status. (ECF No. 271-8 at 4–6.) The Magistrate Judge eventually ruled, intra-deposition, that this line of questioning was irrelevant. (*Id.* at 33–33.)

**F.    Sanctions under the Fair Credit Reporting Act**

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, contains two nearly identical provisions for litigation sanctions:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c); *id.* § 1681o(b).[4] Marten seeks sanctions under these provisions also. (ECF No. 271 at 12–13.) However, both provisions explicitly apply to "an action under this section." Maiteki did not sue Marten under §§ 1681n or 1681o, but rather under § 1681s-2. (*See* ECF No. 157 at 31; *compare id.* at 23, 24, 40, 42 (asserting causes of action against other defendants under §§ 1681n and 1681o).) Thus, these sanctions provisions do not apply. Even if they did, the Court would find that the only "pleading, motion, or other paper" for which Marten should be awarded fees is its summary judgment reply brief. The Court has already concluded that fees are appropriate for that reply under § 1927. The Court therefore denies fees under FCRA.

**G.    Amount to Award**

Marten claims $29,066.50 in attorneys' fees for its summary judgment reply brief. (ECF No. 271 at 14.) Marten further claims that this a reasonable amount under the traditional lodestar analysis (*id.*), although Marten does not attach a breakdown of the *hours* specifically expended in generating the claimed $29,066.50 in fees.

---

[4] The only difference between §§ 1681n(c) and 1681o(b) is that the latter begins with "On" rather than "Upon."

In point of fact, the Court has discretion whether or not to apply the lodestar analysis when calculating a § 1927 fee award. *See Hamilton*, 519 F.3d at 1206–07. Maiteki's Counsel, however, does not argue for any other approach. Indeed, although Maiteki's Counsel contests whether § 1927 fees should be awarded, Counsel has no fallback argument regarding the total fee award or the reasonableness of Marten's claimed hours or rates.

Normally the Court would not award fees without a more-specific breakdown than what Marten has provided. However, in light of Maiteki's Counsel's total failure to object, and because the claimed amount does not strike the Court as unreasonable on its face, the Court will award $29,066.50, as requested.[5]

## II.  ANALYSIS: COSTS

When entering final judgment, the Court awarded Marten its costs. (ECF No. 275.) Marten and Maiteki could not agree on Marten's allowable costs, and therefore sought a hearing in front of the Clerk of Court. *See* D.C.COLO.LCivR 54.1. Given that lead counsel for both parties was out-of-state, the hearing was to be conducted telephonically. (ECF No. 285 at 2.) At the appointed time of the hearing, the Clerk of Court's hearing officer called Maiteki's Counsel's office, but no one answered the phone. Mr. Nyombi, one of Maiteki's attorneys, claims he "was ill with eye health

---

[5] As is typical in responses to motions for sanctions, Maiteki's Counsel's response argues that Marten should itself be sanctioned for filing a supposedly baseless motion for sanctions. (ECF No. 280 at 2, 18–19.) Counsel cites no authority—not even § 1927—for such sanctions. *Cf.* D.C.COLO.LCivR 7.1(d) ("a motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a recitation of legal authority incorporated into the motion"). Furthermore, Counsel has not moved separately for such sanctions. In any event, Marten's motion was not baseless, and therefore not sanctionable.

problems and could not attend the hearing." (*Id.*)  At some unspecified time—and apparently too late—Mr. Nyombi notified his co-counsel, Mr. Emejuru, about the need to substitute.  (*Id.*)  Mr. Emejuru then called the hearing officer and learned that the "hearing had just ended." (*Id.*)

Maiteki has now filed his Costs Motion (ECF No. 285), challenging many of the deposition transcript and videography costs included in the $8,350.08 taxed by the Clerk of Court (ECF No. 283).  Marten does not argue that Maiteki's Counsel's failure to attend the hearing affects the Costs Motion in any way.  The Court will therefore resolve it on its merits.

**A.     Deposition Transcripts**

Concerning deposition transcripts, costs may be taxed if they appeared reasonably necessary to the litigation of the case at the time they were incurred.  *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).  Costs incurred solely for the "convenience of counsel," however, are not recoverable.  *Id.* at 1147.

The Court rejects Maiteki's challenge to Marten's payment for the entire transcript of Maiteki's deposition.  The deposition spanned two days to accommodate counsel for each co-defendant to ask questions.  That does not mean, however, that Marten should only have paid (or that Maiteki should only be charged) for Marten's specific portion of the deposition.  All co-defendants' attorneys contributed to each other's cases through their questions.  In any event, the Court has never heard of a court reporting firm willing to reproduce only part of a deposition at a discount.  Nor is

the Court aware of how it might simulate such a discount for purposes of taxing costs to Maiteki. Thus, Marten justifiably ordered the entire transcript of Maiteki's deposition.

The Court likewise rejects Maiteki's claim that Marten should not have paid for the transcripts of the Rubbani deposition. Marten (and Voyager) noticed these depositions, and it would be very unusual for a party not to obtain the transcript of a deposition it noticed. Maiteki eventually withdrew Rubbani, but only after the second deposition setting. Marten's costs for the Rubbani transcripts were therefore appropriate.

Finally, the Court rejects Maiteki's claim that Marten should not have ordered the transcripts for the depositions of two Voyager employees. The connection of those employees to Marten's case is somewhat less direct, but the Court cannot say that Marten's choice to obtain these transcripts was not reasonable at the time the choice was made. The Court therefore will not subtract any deposition transcript costs from Marten's claim.

**B.     Deposition Videos**

Because deposition transcripts and deposition videos serve different purposes (the former is best for presenting written arguments, the latter is best for presenting testimony in court), "the better practice is to allow the costs of both videotaped and stenographic depositions, absent some good reason not to do so." *Meredith v. Schreiner Transp., Inc.*, 814 F. Supp. 1004, 1006 (D. Kan. 1993), *cited with approval in Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997).

Maiteki has articulated no good reason to disallow the costs for videotaping the depositions that Marten noticed. However, the Court agrees with Maiteki that the costs of videotaping the Konsela and Sobotta depositions should not be assessed against him. Maiteki noticed the Konsela and Sobotta depositions, not Marten, and Maiteki never intended to videotape them. Marten itself arranged to have a videographer present. This led to a dispute requiring resolution by the Magistrate Judge. The Magistrate Judge asked Maiteki's Counsel, "[T]hey're not asking you to pay for the videographer, are they?" Before Maiteki's Counsel could respond, counsel for Marten answered, "No, we're not, Your Honor." (ECF No. 271-11 at 4.)

This exchange, on its face, could mean only that Marten would not send the videographer's bill directly to Maiteki's Counsel. It does not necessarily mean that Marten never intended to attempt to recoup the cost later. However, under the circumstances that led to the Magistrate Judge's intervention, the Court finds that Marten should not be permitted to recoup this cost. Not only did counsel for Marten deny any intent to require Maiteki's Counsel to pay for the videographer, but arranging for video at a deposition that you did not notice strikes this Court as something done for the convenience or preference of counsel, rather than as reasonably necessary. *Williams*, 558 F.3d at 1148. Accordingly, the cost of those deposition videos ($1,509.71) will be subtracted from Marten's final award of costs.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Marten's Motion for Attorneys' Fees and Sanctions (ECF No. 271) is GRANTED IN PART and DENIED IN PART as follows:

    a.    Marten is AWARDED $29,066.50 in attorneys' fees, payable by Maiteki's attorneys, Andrew Nyombi and Ikechukwu Emejuru, and not by Maiteki himself;

    b.    Marten's Motion for Attorneys' Fees and Sanctions is otherwise DENIED;

2.    Maiteki's Motion to Review Clerk's Order Taxing Costs (ECF No. 285) is GRANTED IN PART and DENIED IN PART as follows:

    a.    The costs taxed by the Clerk of Court (ECF No. 283) are REDUCED by $1,509.71, and Marten is therefore AWARDED costs in the amount of $6,840.37; and

    b.    Maiteki's Motion to Review Clerk's Order Taxing Costs is otherwise DENIED.

Dated this 18th day of July, 2016.

BY THE COURT:

_William J. Martinez_
William J. Martinez
United States District Judge